~~~ JUDICIAL DISTRICT COURT
DONA ANA COUNTY N
FILED IN MY OFFIC
12/16/2016 9:24:50 A
CLAUDE BOWM/
Josephina Gom

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT COURT

DONNY HERNANDEZ        *
                         *
       Plaintiff           *
                         *
v.                         *     No. _D-307-CV-2016-02766_
                         *
ALLSTATE INSURANCE COMPANY    *              Arrieta, Manuel I.
                         *
       Defendant        *

## PLAINTIFF'S ORIGINAL COMPLAINT

1. Plaintiff owns real estate in Dona Ana County, New Mexico, and that real estate is the subject of this lawsuit.

2. Defendant may be served with summons by serving an officer of the Residual Markets Unit, 3075 Sanders Road, Suite H2D, Northbrook, IL 60062-3075.

3. Plaintiff purchased from Defendant a landlord's package insurance policy to cover the home that he owns at 8 Cielo del Rey, Anthony, New Mexico. Coverage was effective from April 10, 2014 to April 10, 2015.

4. The policy included an endorsement, "Landlord's Package Policy-Vandalism Coverage-AS134". The policy and endorsement are attached hereto as Exhibit A.

5. At the time that the policy was purchased, Plaintiff had tenants in the property and purchased the Landlord's Package based on the advise of the agent for the Defendant.

6. The tenants vacated the property and on or about January 1, 2015, Plaintiff discovered that the tenants had vandalized the home by tearing up carpet, knocking holes in the walls, damaging appliances and many other acts of vandalism.

EXHIBIT A

7. Plaintiff submitted a claim to his insurance agent who forwarded the claim to Defendant's claim's office as a vandalism claim. On or about February 24, 2015, Defendant denied the claim as reflected on the attached Exhibit B.

8. The Plaintiff resubmitted the claim which was denied on November 21, 2016.

9. There is no basis for the claim to be denied because the policy endorsement mentioned above viciates all of the policy provisions upon which each denial letter is based. Even after the second denial and the adjuster was advised of the policy coverages and the denial was reaffirmed.

10. Plaintiff would show that the Defendant has violated the New Mexico Insurance Code, §59A-16-20 because of its unfair claims' practices in the following respects:

"A. misrepresenting to insureds pertinent facts or policy provisions relating to coverage at issue;

D. failing to affirm or deny coverage of claims of insured within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured;

E. not attempting in good faith to effecutate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

G. compelling insured to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered;

N. failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or ...".

The foregoing are the unfair claims practices committed by Defendant.

11. Plaintiff would show that not only is Plaintiff entitled to recover all of the damages he sustained by the tenants' vandalism in an amount of at least $45,000.00. He is also entitled to

recover attorney fees pursuant to 39-2-1 because Defendant has acted unreasonably in failing to pay the claim.  Such attorney fees would be not less than $50,000.00.

WHEREFORE, Plaintiff prays that Defendant be cited to appear and answer herein and that upon final hearing hereof Plaintiff have and recover from the Defendant all damages that should have been paid by Defendant in the claim in the amount of $45,000; attorney fees and such other and further relief to which the Plaintiff may show himself justly entitled.

Respectfully submitted,

ROBERT A. SKIPWORTH
Attorney for Plaintiff
NM Bar No. 14760
310 N. Mesa, Suite 600
El Paso, TX 79901
915/533-0096        Fax 915/544-5348
rskipworth@robertskipworth.com

# Exhibit A

Yolanda M Estrada
11345 Montwood #B
El Paso TX 79936

**Your Quick Insurance Check**

✓ Verify the information listed in the
  Policy Declarations.
✓ Please call if you have any questions.
✓ Now you can pay your premium
  before your bill is issued - visit
  allstate.com or call 1-800-Allstate ®.

Donny Hernandez
11205 Bob Mitchell Dr
El Paso TX  79936-4624

Dear Customer:

Thank you for being an **Allstate Indemnity Company** customer. We're glad to have you with us.

**Your Property Premium**
We're  writing to let you know that we sent you an Important Notice entitled "Dwelling Profile" that included incorrect information regarding your insured property. As a result, your overall premium was lower than it should have been for the current period.

**We Have Corrected This Issue**
Please accept our apologies. To correct this, we have adjusted your premium based on the corrected information and enclose an Amended Policy Declarations that reflects this change. Also, we will send you a new "Dwelling Profile" with your property's correct information at the next renewal of your policy.

Because this was our error, you will not be required to pay any additional premium during the current period as a result. However, we will charge you the correct premium amount for any future renewal offer.

**Have Questions? Please Contact Us**
If you have any questions regarding the information in this letter or your insurance coverage in general, please feel free to contact your Allstate Indemnity Company representative.

Thank you again for choosing Allstate Indemnity Company. We appreciate your business.

Sincerely,

*Customer Service Department*

Customer Service Department

PROP *0100030140520530016304001*                   000000986352458  072    060    NM

Information as of
May 20, 2014                              CWS2



Claim# 0356743260

To Whom It May Concern:

I, Patricia Torres _____, employee of Allstate Insurance Company Irving, Texas, do certify that the enclosed is a copy of policy and or declaration page for the above claim number, showing the coverages that were on the policy at the time of loss of 01/01/2015 _____. The enclosed copy of policy and or declaration page was printed and mailed through Allstate's Output Processing Center.

Claim Support

State of Texas, County of Dallas

On this ____1st____ day of ____April____ 2015, before me personally appeared _Patricia Torres_ to me known to be the person who executed the foregoing instrument and acknowledged that he/she executed the same as a free act and deed.

MARY PERL
Notary Public, State of Texas
My Commission Expires
October 17, 2015

Notary Public

052-3

## Allstate Indemnity Company

# AMENDED
# Landlords Package
# Policy Declarations

## Summary

**NAMED INSURED(S)**
Donny Hernandez
11205 Bob Mitchell
El Paso TX 79936-4624

**YOUR ALLSTATE AGENT IS:**
Yolanda M Estrada
11345 Montwood #B
El Paso TX 79936

**CONTACT YOUR AGENT AT:**
(915) 855-7766

**POLICY NUMBER**
9 86 352468 04/10

**POLICY PERIOD**
Begins on Apr. 10, 2014
at Noon standard time,
with no fixed date of expiration

**PREMIUM PERIOD**
Apr. 10, 2014  to Apr. 10, 2015
at Noon standard time

**LOCATION OF PROPERTY INSURED**
8 Cielo Del Rey, Anthony, NM 88021-9210

**MORTGAGEE(S)**  (Listed in order of precedence)

- PNC BANK NA          ISAOA ATIMA
  P O Box 7433     Springfield OH 45501-7433        *Loan # 3459051*

- CITIMORTGAGE INC          ITS SUCCESSORS
  &/OR ASSIGNS
  P O Box 7706     Springfield OH 45501-7706        *Loan # 0770314935*

## Total Premium for the Premium Period  (Your bill will be mailed separately)

| | |
|---|---|
| Premium for Property Insured | $1,020.04 |
| **TOTAL** | **$1,020.04** |

The portion of the total premium shown above that is attributable to coverage for losses caused by "acts of terrorism" to which
the federal Program established by the "Terrorism Risk Insurance Act", as amended, applies is $0.00.  SEE THE ENCLOSED
"POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE" -- AP3337-2.

*Your policy change(s) are effective as of May  6, 2014*

PROP  *010000014062053001630402*

Information as of
May 20, 2014

Page 1

NA072AMD

# Allstate Indemnity Company

Policy Number:  **9 86 352468 04/10**    Your Agent:  **Yolanda M Estrada (916) 855-7766**
For Premium Period Beginning:    **Apr. 10, 2014**

## POLICY COVERAGES AND LIMITS OF LIABILITY

| COVERAGE AND APPLICABLE DEDUCTIBLES<br>(See Policy for Applicable Terms, Conditions and Exclusions) | LIMITS OF LIABILITY | |
|---|---|---|
| Dwelling Protection<br> • $500   All Peril Deductible Applies | $380,000 | |
| Other Structures Protection<br> • $500   All Peril Deductible Applies | $38,000 | |
| Personal Property Protection - Reimbursement Provision<br> • $500   All Peril Deductible Applies | $19,000 | |
| Fair Rental Income Protection | Refer to Policy | |
| Liability Protection | $500,000 | each occurrence |
| Premises Medical Protection | $5,000 | each person |
| Fire Department Charges | $500 | |
| Loss Assessments<br> • $500   All Peril Deductible Applies | $50,000 | each occurrence |

## DISCOUNTS   Your premium reflects the following discounts on applicable coverage(s):
Protective Device                              5 %

## RATING INFORMATION
The dwelling is of Frame construction and is occupied by  1 family

Information as of
May 20, 2014

**Page 2**

6N072AMD

# Allstate Indemnity Company

Policy Number:   9 86 352468 04/10      Your Agent:   Yolanda M Estrada (915) 855-7766
For Premium Period Beginning:   Apr. 18, 2014

## *Your Policy Documents*

Your Landlords Package policy consists of this Policy Declarations and the documents listed below. Please keep these together.

- Landlords Package Policy form AS84
- Notice of Terrorism Insurance Cov. form AP3337-2
- Standard Fire Policy Provisions form AU277-2

- New Mexico LPP Amendatory End. form AS240
- LPP - Vandalism Coverage End. form AS134
- Amendatory Endorsement form AP4813

## *Important Payment and Coverage Information*

The Property Insurance Adjustment condition applies.

Do not pay.  Mortgagee has been billed.

---

IN WITNESS WHEREOF, Allstate Indemnity Company has caused this policy to be signed by two of its officers at Northbrook, Illinois, and if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of Allstate Indemnity Company.

Steven P. Sorenson
President

Mary J. McGinn
Secretary

# Allstate Indemnity Company

Policy Number:   9 86 352468 04/10      Your Agent:   Yolanda M Estrada  (915) 855-7766
For Premium Period Beginning:    Apr. 10, 2014

---

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

---

## Policyholder Disclosure
## Notice of Terrorism Insurance Coverage – AP3337-2

The federal Terrorism Risk Insurance Act, as amended, (the federal Act), establishes a temporary federal Program (the federal Program) providing for a system of shared public and private compensation for certain insured commercial property and casualty losses resulting from "acts of terrorism," as defined in the federal Act.

The federal Act defines an "act of terrorism" as an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside of the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**Your** insurance coverage includes coverage for losses caused by "acts of terrorism" to which the federal Program applies. This coverage is subject to all other terms, conditions, limitations and exclusions of **your** policy.

### Disclosure of Federal Share of Compensation for Insured Losses
Insured losses caused by "acts of terrorism" to which the federal Program applies would be partially reimbursed by the United States Government under a formula established by the federal Act. Under that formula, the United States Government pays 85 percent of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

**You** should also know that the federal Act contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "acts of terrorism" to which the federal Program applies when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceeds $100 billion, **your** coverage may be reduced to the extent permitted by the federal Act or any regulations promulgated thereunder.

### Disclosure of Premium
The portion of **your** annual premium that is attributable to coverage for losses caused by "acts of terrorism" to which the federal Program applies is $0.00.

PROP  *010000014052053001630404*

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Amendatory Endorsement — AP4813

In the General section, the Loss Reduction And Other Items provision is added:

**Loss Reduction And Other Items**
From time to time and at our sole discretion:

1.  we may provide you, or allow others to provide you, with:

    a) items, memberships, special offers, merchandise, points, rewards, airline miles, services, classes, seminars, or other things of value designed to help you or other persons insured under this policy manage the risks you or they face, including, but not limited to, loss reduction or safety-related items; or

    b) items, memberships, special offers, merchandise, points, rewards, airline miles, services, classes, seminars, or things of any other type that we think may be of value to you or someone else insured under this policy.

2.  we may make, or allow others to make, one or more of the following: charitable contributions, donations, or gifts.

These items, memberships, special offers, merchandise, points, rewards, airline miles, services, classes, seminars, charitable contributions, donations, gifts, or other things of value may be provided in any form, including, but not limited to, redemption codes, coupons, vouchers, and gift cards.

All other policy terms and conditions apply.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy — Keep It With Your Policy*

## Landlords Package Policy — Vandalism Coverage — AS134

For an additional premium and when **your** Policy Declarations lists this endorsement AS134 as being applicable, **your** Landlords Package Policy is amended as follows:

A.  Under Coverage A — Dwelling Protection and Coverage B — Other Structures Protection, Losses We Do Not Cover Under Coverages A and B, item A. 18 is replaced by the following:

    18.  **Vandalism**, or loss caused by fire resulting from **vandalism**, if **your dwelling** is vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.

B.  Under Coverage A — Dwelling Protection and Coverage B — Other Structures Protection, Losses We Do Not Cover Under Coverages A and B, the following is added to item A. 19:

    i)  vandalism

C.  Under Coverage C — Personal Property Protection, Losses We Cover Under Coverage C, the following item is added:

    **Vandalism**. However, **we** do not cover loss caused by **vandalism**, or loss caused by fire resulting from vandalism, if the **dwelling** is vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.

D.  Under **Section I Additional Protection**, item 2 (entitled "**Trees, Shrubs, Plants and Lawns**"), the last sentence of the first paragraph is replaced by the following:

    This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles, theft, **vandalism**, or collapse of a **building structure** or any part of the **building structure**.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy — Keep It With Your Policy*

## New Mexico
## Landlords Package Policy Amendatory Endorsement — AS240

I.   In the **General** section of the policy, the **Cancellation** provision is replaced by the following:

**Cancellation**
**Your** Right to Cancel:
**You** may cancel this policy by returning it to **us** or by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:
**We** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. **Our** mailing of the cancellation notice to **you** shall be deemed to be proof of notice. When this policy has been in effect for less than 60 days, and is not a renewal with **us**, **we** may cancel this policy for any reason by mailing **you** notice at least 10 days before the cancellation takes effect.

When this policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:
1.   Non-payment of premium; or
2.   The policy has been obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of risk or hazard assumed by **us**; or
3.   Willful and negligent acts or omission by an **insured person** that have substantially increased the hazards insured against; or
4.   **You** presented a claim based on fraud or material misrepresentation; or
5.   There has been a substantial change in the risk assumed by **us** since **your** policy was issued.

If the cancellation is for non-payment of premium, **we** will mail **you** notice 10 days before cancellation takes effect. If cancellation is for any of the other reasons, **we** will mail **you** notice at least 30 days before the cancellation takes effect.

Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

Any unearned premium amounts under $2.00 will be refunded only upon **your** request.

**Our** Right Not to Renew or Continue:
**We** have the right not to renew or continue the policy beyond the current premium period. If **we** don't intend to renew or continue the policy, **we** will mail **you** notice at least 30 days before the end of the premium period. **Our** mailing the notice of nonrenewal to **you** will be deemed proof of notice.

Page 1

II.   In Section I—Conditions, item 5, **How We Pay For A Loss**, is replaced by the following:

5.   **How We Pay For A Loss**

Under **Coverage A—Dwelling Protection**, payment for covered loss to **your dwelling** will be by the following methods:

**Replacement Cost**. This means there will not be a deduction for depreciation. This payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of the **building structure** damaged by a covered loss.

Replacement Cost payment will not exceed the smallest of the following amounts:
1)   the replacement cost of the part(s) of the damaged dwelling and attached **building structure** with equivalent construction for similar use on the same premises;
2)   the amount actually and necessarily spent to repair or replace the damaged **dwelling** and attached **building structure** with equivalent construction for similar use on the same premises; or
3)   the limit of liability applicable to the **dwelling** and attached **building structure** as shown on the Policy Declarations for **Coverage A—Dwelling Protection**.

If **you** replace the damaged **dwelling** and attached **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new **building structure** or purchase of an existing **building structure**, such replacement will not increase the amount payable under Replacement Cost described above. The amount payable under Replacement Cost described above does not include the value of any land associated with the replacement structure.

Replacement Cost will not apply to:
1)   property covered under **Coverage A—Dwelling Protection** that is not part of the **dwelling**;
2)   property covered under **Coverage B—Other Structures Protection** that is not a **building structure**;
3)   property covered under **Coverage C—Personal Property Protection**;
4)   structures that are not **building structures**, whether or not attached to the **dwelling** such as fences, swimming pools, patios, awnings, carpeting and outdoor antennas; or
5)   land.

Replacement Cost payment will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of the **dwelling** and attached **building structures**.

Under **Coverage B—Other Structures Protection** and **Coverage C—Personal Property Protection**, payment for covered loss will be by one or more of the following methods:

a)   **Special Payment**. At our option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:
1)   the whole amount of loss for property covered under **Coverage B—Other Structures Protection**, without deduction for depreciation, is less than $2,500;
2)   the whole amount of loss for property covered under **Coverage C—Personal Property Protection**, without deduction for depreciation, is less than $2,500, **your** Policy Declarations

**Page 2**

shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) **Actual Cash Value.** If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

If applicable, **you** may make claim for additional payment as described in paragraph c) and paragraph d) below if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

c) **Building Structure Reimbursement.** Under **Coverage B — Other Structures Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure(s)** damaged by a covered loss.

This additional payment shall not include any amounts which may be paid or payable under **Section I, Conditions — Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss,** and shall not be payable for any losses excluded in **Section I — Your Property,** under **Losses We Do Not Cover Under Coverages A and B,** item C.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
  1) the replacement cost of the part of the **building structure(s)** for equivalent construction for similar use on the same premises;
  2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same premises; or
  3) the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage B — Other Structures Protection,** regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new **building structure** or purchase of an existing **building structure,** such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
  1) property covered under **Coverage C — Personal Property Protection;**

Page 3

2)  property covered under **Coverage B—Other Structures Protection** that is not a **building structure**;

3)  wall-to-wall carpeting, ceramic or vinyl floor coverings, hardwood floors, built-in appliances, fences, awnings and outdoor antennas whether or not fastened to a **building structure**; or

4)  land.

Payment under a), b), or c) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures.

d)  **Personal Property Reimbursement**. When the Policy Declarations shows that the Personal Property Reimbursement provision applies under **Coverage C—Personal Property Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1)  the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2)  the cost of repair or restoration; or
3)  the limit of liability shown on the Policy Declarations for **Coverage C—Personal Property Protection**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:
1)  property insured under **Coverage A—Dwelling Protection** and **Coverage B—Other Structures Protection**;
2)  antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3)  articles whose age or history contribute substantially to their value. This includes, but is not limited to memorabilia, souvenirs and collector's items; or
4)  property that was obsolete or unusable for its originally intended purpose because of age or condition prior to the loss.
5)  wall-to-wall carpeting.

All other policy terms and conditions apply.

**Page 4**

# Allstate
# Landlords
# Package
# Policy

Policy: //////////////////

Effective: //////////////////

Issued to:

//////////////////////////////////////////////
//////////////////////////////////////////////
//////////////////////////////////////////////
//////////////////////////////////////////////

//////////////////////////////////////////////
((((((((((((((((((((((((((((((((((
((((((((((((((((((((((((((((((((((
((((((((((((((((((((((((((((((((((

Allstate Indemnity Company
The Company Named in the Policy Declarations
A Stock Company—Home Office: Northbrook, Illinois 60062

AS84

## Table of Contents

### GENERAL

Definitions Used in This Policy............................2
Insuring Agreement ........................................3
Conformity to State Statutes ...........................4
Coverage Changes..........................................4
Policy Transfer ...............................................4
Continued Coverage After Your Death............4
Cancellation ...................................................4
Misrepresentation, Fraud or Concealment......5
Charge for Insufficient Funds..........................5
Conditional Reinstatement..............................5
What Law Will Apply .......................................5
Where Lawsuits May Be Brought.....................5
Action Against Us............................................6
Arbitration......................................................6

### SECTION I—YOUR PROPERTY

**Coverage A
Dwelling Protection**

Property We Cover Under Coverage A.............6
Property We Do Not Cover Under
   Coverage A.................................................6

**Coverage B
Other Structures Protection**

Property We Cover Under Coverage B.............6
Property We Do Not Cover Under
   Coverage B.................................................7

Losses We Cover Under Coverages A and B ....7
Losses We Do Not Cover Under
   Coverages A and B ......................................7

**Coverage C
Personal Property Protection**

Property We Cover Under Coverage C............10
Property We Do Not Cover Under Coverage C..10
Losses We Cover Under Coverage C ..............11
Losses We Do Not Cover Under Coverage C.....12

**Coverage D
Fair Rental Income**

We Will Cover Under Coverage D....................14

### Section I Additional Protection

Debris Removal .............................................14
Trees, Shrubs, Plants and Lawns ..................14
Emergency Removal of Property .....................15
Fire Department Charges ...............................15
Temporary Repairs After a Loss .....................15
Arson Reward................................................15
Collapse........................................................15
Land .............................................................16

### Section I—Conditions

Deductible .....................................................16
Insurable Interest and Our Liability................16
What You Must Do After a Loss ......................16
Our Settlement Options .................................17
How We Pay For a Loss ..................................17
Our Settlement of Loss ..................................19
Appraisal .......................................................19
Abandoned Property.......................................19
Mortgagee .....................................................19
Permission Granted to You ............................20
Our Rights To Recover Payment ....................20
Our Rights To Obtain Salvage........................20
Action Against Us ..........................................20
Loss to A Pair or Set .....................................20
Glass Replacement.........................................20
No Benefit to Bailee.......................................20
Other Insurance.............................................20
Property Insurance Adjustment .....................20
Mold, Fungus, Wet Rot and Dry Rot
   Remediation as a Direct Result
   of a Covered Water Loss ............................21

### SECTION II—LIABILITY AND PREMISES MEDICAL PROTECTION

**Coverage X
Liability Protection**

Losses We Cover Under Coverage X................21
Losses We Do Not Cover Under Coverage X ....22

**Coverage Y
Premises Medical Protection**

Losses We Cover Under Coverage Y................24

Losses We Do Not Cover Under Coverage Y.....24

**Section II — Additional Protection**

Claim Expenses.............................................25
Emergency First Aid.......................................25

**Section II Conditions**

What You Must Do After a Loss.....................25
What an Injured Person Must Do —
     Coverage Y — Premises Medical
     Protection.............................................26
Our Payment of Loss — Coverage Y —
     Premises Medical Protection..................26
Our Limits of Liability.....................................26
Bankruptcy ..................................................26
Our Rights to Recover Payment —
Coverage X — Liability Protection ..................26
Action Against Us..........................................26
Other Insurance — Coverage X —
     Liability Protection...............................27

**SECTION III — OPTIONAL PROTECTION**

**Optional Coverages
You May Buy**

Coverage BC
     Building Codes ......................................27
Coverage F
     Fire Department Charges ......................27
Coverage G
     Loss Assessments ................................27
Coverage SD
     Satellite Dish Antennas ........................28

## GENERAL

### Definitions Used in This Policy

1. **Bodily injury** — means physical harm to the body, including sickness, disability or disease, and resulting death, except that **bodily injury** does not include:
   a) any venereal disease;
   b) Herpes;

   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

   Under **Coverage Y — Premises Medical Protection, bodily injury** means physical harm to the body, including sickness or disease, except that **bodily injury** does not include:

   a) any venereal disease;
   b) Herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

2. **Building structure** — means a structure with walls and a roof.

3. **Business** — means any full or part-time activity of any kind engaged in for economic gain and the use of any part of any premises for such purposes. However, the lawful rental or lease, or holding for rental or lease, of the **residence premises** will not be considered a **business.**

4. **Dwelling** — means a one, two, three or four family **building structure** which is used principally as a private residence and located at the address stated on the Policy Declarations.

5. **Insured person(s)** — means:
   a) if you are shown on the Policy Declarations as an individual and you are a sole proprietor, you and **your** resident spouse.
   b) if you are shown on the Policy Declarations as a partnership or joint

Page 2

venture, the named partnership or joint venture, including any of its partners or members individually while acting within the course and scope of their duties in connection with the ownership, maintenance or use of the **residence premises.**

c) if **you** are shown on the Policy Declarations as an organization other than a partnership or joint venture, the organization directors, trustees or governors of the organization while acting within the course and scope of their duties in connection with the ownership, maintenance or use of the **residence premises.**

d) **your** employees, while acting within the course and scope of their employment in connection with the ownership, maintenance or use of the **residence premises.**

e) any person or organization while acting as **your** real estate manager for the **residence premises.**

This policy does not apply to **bodily injury, personal injury** or **property damage** arising from the conduct of any partnership, joint venture or organization which is not named on the Policy Declarations as the insured.

6. **Occurrence** —means:

a) under **Coverage X — Liability Protection,** an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury, personal injury** or **property damage** and arising from the ownership, maintenance or use of the **residence premises.**

b) under **Coverage Y — Premises Medical Protection,** an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** and arising from the ownership,

maintenance or use of the **residence premises.**

7. **Personal injury** —means damages resulting from:

a) false arrest; false imprisonment; wrongful detention;

b) wrongful entry; invasion of rights of occupancy; wrongful eviction;

c) libel; slander; humiliation; defamation of character; invasion of rights of privacy.

8. **Property damage** —means physical harm to or destruction of tangible property, including loss of its use resulting from such physical harm or destruction. **Property damage** does not include theft or conversion of property by an **insured person.**

9. **Rental Unit** —means that portion of **your dwelling** which forms separate living space intended for **tenant** occupancy.

10. **Residence premises** —means **your dwelling,** other structures and land located at the address stated on the Policy Declarations.

11. **Tenant** —means any person who rents, leases or lawfully occupies a **rental unit.**

12. **Vandalism** —means willful or malicious conduct resulting in damage or destruction of property. **Vandalism** does not include theft of property.

13. **We, us,** or **our** —means the company named on the Policy Declarations.

14. **You** or **your** —means the person(s), partnership, joint venture, or organization specifically named on the Policy Declarations as the insured.

*Insuring Agreement*

In reliance on the information **you** have given **us, we** agree to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due, comply with the policy terms

Page 3

and conditions, and inform us of any change in title or use of the **residence premises.**

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises,** applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the Policy Period. The Policy Period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on persons defined as an **insured person.** This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon every other person defined as an **insured person.**

### Conformity To State Statutes
When a policy provision conflicts with the statutes of the state in which the **residence premises** is located, the provision is amended to conform to such statutes.

### Coverage Changes
When we broaden coverage during the premium period without charge, you have the broadened coverage if you have purchased the coverage to which the changes apply. The broadened coverage applies on the date the coverage change is effective in your state. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information you have given us. You agree to cooperate with us in determining if this information is correct and complete. You agree that if this information changes or is incorrect or incomplete, we may adjust your coverage and premium accordingly during the policy period.

Any calculation of your premium or changes in your coverage will be made using the rules, rates and forms on file, if required, for our use in your state. The rates in effect at the beginning of your current premium period will be used to calculate any change in your premium.

### Policy Transfer
You may not transfer this policy to another person or organization without our written consent.

### Continued Coverage After Your Death
If you die, coverage will continue until the end of the premium period for:
1.  **Your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.

2.  An **insured person,** and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

### Cancellation
Your Right to Cancel:
You may cancel this policy by notifying us of the future date you wish to stop coverage.

Our Right to Cancel:
We may cancel this policy by mailing notice to you at the mailing address shown on the Policy Declarations.

When this policy has been in effect for less than 60 days, and is not a renewal with us, we may cancel this policy for any reason by giving you at least 10 days notice before the cancellation takes effect.

When this policy has been in effect for 60 days or more, or if it is a renewal with us, we may cancel this policy for one or more of the following reasons:
1.  non-payment of premium;
2.  the policy was obtained by misrepresentation, fraud or concealment of material facts;
3.  material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms;
4.  there has been a substantial change or increase in hazard in the risk we originally accepted; or
5.  the **dwelling** has been condemned by a governmental authority.

Page 4

If the cancellation is for non-payment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any of the other reasons, **we** will give **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Continue or Renew:
**We** have the right not to continue or renew this policy beyond the current premium period. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the premium period. **Our** mailing the notice or nonrenewal to **you** will be deemed proof of notice.

*Misrepresentation, Fraud or Concealment*
**We** may void this policy if it was obtained by misrepresentation, fraud or concealment of material facts. If **we** determine that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

*Charge for Insufficient Funds*
If at any time, **your** payment of any premium amount due is made by check, electronic transaction, or other remittance which is not honored because of insufficient funds or a closed account, **you** will be charged a fee.

*Conditional Reinstatement*
If **we** mail a cancellation notice because **you** didn't pay the required premium when due and **you** then tender payment by check, draft, or other remittance which is not honored upon presentation, **your** policy will terminate on the date and time shown on the cancellation notice and any notice **we** issue

which waives the cancellation or reinstates coverage is void. This means that **we** will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

*What Law Will Apply*
This policy is issued in accordance with the laws of the state in which the **residence premises** is located and covers property or risks principally located in that state. Subject to the following paragraph, the laws of the state in which the **residence premises** is located shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside the state in which the **residence premises** is located, claims or disputes regarding that covered loss to property, or any other covered **occurrence** may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

*Where Lawsuits May Be Brought*
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside the state in which the **residence premises** is located, lawsuits regarding that covered loss to property, or any other covered

Page 5

occurrence may also be brought in the judicial district where that covered loss to property, or any other covered occurrence happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

### Action Against Us

No one may bring an action against us unless there has been full compliance with all policy terms.

Any action against us to which neither the **Action Against Us** provision located in **Section I Conditions** nor the **Action Against Us** provision located in **Section II Conditions** applies must be commenced within one year of the date the cause of action accrues.

If an action is brought asserting claims relating to the existence or amount of coverage, or the amount of loss for which coverage is sought, under different coverages of this policy, the claims relating to each coverage shall be treated as if they were separate actions for the purpose of the time limit to commence action.

### Arbitration

Any claim or dispute in any way related to this policy, by an **insured person** against **us** or **us** against an **insured person**, may be resolved by arbitration only upon mutual consent of the parties. Arbitration pursuant to this provision shall be subject to the following:

a)  no arbitrator shall have the authority to award punitive damages or attorney's fees;
b)  neither of the parties shall be entitled to arbitrate any claims or disputes in a representative capacity or as a member of a class; and
c)  no arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims or disputes in arbitration.

## SECTION I – YOUR PROPERTY

### Coverage A
#### Dwelling Protection

*Property We Cover Under Coverage A:*

1.  **Your** dwelling, including attached structures, at the **residence premises**. Fences, and structures connected to **your** dwelling by only a fence, utility line, or similar connection, are not considered attached structures.

2.  Construction materials and supplies at the **residence premises** for use in connection with **your** dwelling.

3.  Wall-to-wall carpeting fastened to **your** dwelling.

*Property We Do Not Cover Under Coverage A:*

1.  Any structure or other property covered under **Coverage B – Other Structures Protection.**

2.  Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.

3.  Satellite dish antennas and their systems, whether or not attached to **your dwelling.**

4.  Construction materials and supplies at the **residence premises** for use in connection with structures other than **your dwelling.**

### Coverage B
#### Other Structures Protection

*Property We Cover Under Coverage B:*

1.  Structures at the address shown on the Policy Declarations separated from **your** dwelling by clear space.

2.  Structures connected to **your dwelling** by only a fence, utility line, or similar connection.

Page 6

3. Construction materials and supplies at the **residence premises** for use in connection with structures, other than **your dwelling**, at the **residence premises**.

4. Wall-to-wall carpeting fastened to building structures other than **your dwelling**.

5. Fences at the **residence premises**, whether or not connected to **your dwelling**.

*Property We Do Not Cover Under Coverage B:*

1. Any structure or other property covered under **Coverage A—Dwelling Protection**.

2. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.

3. Satellite dish antennas and their systems, whether or not attached to a **building structure**.

4. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling** or any structure not located at the **residence premises**.

*Losses We Cover Under Coverages A and B:*

We will cover sudden and accidental direct physical loss to property described in **Coverage A—Dwelling Protection** and **Coverage B—Other Structures Protection** except as limited or excluded in this policy.

*Losses We Do Not Cover Under Coverages A and B:*

A. We do not cover loss to the property described in **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** consisting of or caused by:
   1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

   2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through, any part of the **residence premises**.

   We do cover sudden and accidental direct physical loss caused by fire or explosion resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   We do cover sudden and accidental direct physical loss caused by fire, explosion, or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**.

   We do cover sudden and accidental direct physical loss caused by actions of civil authority to prevent the spread of fire.

Page 7

7. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9. Intentional or criminal acts of, or at the direction of, an **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether an **insured person** is actually charged with, or convicted of, a crime.

10. Collapse of a **building structure** or any part of a **building structure**, except as specifically provided in **Section I – Additional Protection** under item 7, Collapse.

11. Soil conditions, including, but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

12. Any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
    a) lead in any form;
    b) asbestos in any form;
    c) radon in any form; or
    d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

13. a) Wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
    b) Mechanical breakdown;

c) Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
d) Rust or other corrosion;
e) Contamination, including, but not limited to, the presence of toxic, noxious, or hazardous gasses, chemicals, liquids, solids or other substances at the **residence premises** or in the air, land or water serving the **residence premises**;
f) Smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;
g) Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
h) Insects, rodents, birds or domestic animals. We do cover the breakage of glass or safety glazing materials caused by birds; or
i) Seizure by government authority.

If any of a) through h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within **your dwelling**, **we** cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of **your dwelling** necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

14. Freezing of:
    a) plumbing, fire protective sprinkler systems, heating or air conditioning systems;
    b) household appliances; or

Page 8

c)   swimming pools, hot tubs and spas within the **dwelling**, their filtration and circulation systems;

or discharge, leakage or overflow from within a), b) or c) above, caused by freezing, while the **building structure** or **any rental unit** in that **building structure** is vacant, unoccupied or being constructed, unless **you** have used reasonable care to:

a)   maintain heat in the **building structure** including all **rental units**; or

b)   shut off the water supply and drain the system and appliances in the **building structure**.

15. Freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not. This exclusion applies to:

a)   fences, pavements, patios, foundations, retaining walls, bulkheads, piers, wharves and docks; and

b)   swimming pools, hot tubs, spas, their filtration and circulation systems if the swimming pool, hot tub or spa is not located within a heated portion of the **dwelling**.

16. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:

a)   from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or

b)   from within or around any plumbing fixtures, including, but not limited to, shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

17. Theft or burglary.

However, we will cover damage to the exterior of covered **building structures** caused by the breaking in of a burglar or burglars if the **dwelling** is completed

and has not been vacant or unoccupied for more than 90 consecutive days immediately prior to the loss. When we cover damage to the exterior of covered **building structures** caused by a burglar or burglars, we will also cover damage to interior surfaces of exterior doors and windows damaged by the break-in.

18. **Vandalism.** However, **we do cover** sudden and accidental direct physical loss caused by fire resulting from **vandalism** unless **your dwelling** has been vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.

19. Any act of **a tenant**, or guests of a **tenant**, unless the act results in sudden and accidental direct physical loss caused by:

a)   fire;

b)   explosion;

c)   vehicles;

d)   smoke. However, **we do not cover** loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations;

e)   increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring;

f)   bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water;

g)   water or steam that escapes, due to accidental discharge or overflow, from a plumbing, heating or air conditioning system, an automatic fire protection system, or a household appliance; or

h)   freezing of a plumbing, heating or air conditioning system or a household appliance.

Page 9

20. Weather conditions that contribute in any way with a cause of loss excluded under **Losses We Do Not Cover Under Coverage A and B** to produce a loss.

21. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance

    of property whether on or off the **residence premises** by any person or organization.

B. We do not cover loss to the property described in **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** when:
    1) there are two or more causes of loss to the covered property; and
    2) the predominant cause(s) of loss is (are) excluded under items A.1 through A. 21 above.

C. We do not cover loss to the property described in **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** consisting of or caused by mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

    This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I Conditions —Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

D. We do not cover loss to the property described in **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** consisting of or caused by the following. These exclusions apply regardless of whether any other cause contributed concurrently or in any sequence to produce the loss:
    1) Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

        We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.
    2) War or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

*Coverage C*
*Personal Property Protection*

*Property We Cover Under Coverage C:*

Personal property owned or used by an **insured person** which is rented or held for rental with the **residence premises,** or used for the service of the **residence premises.** Coverage applies only while the personal property is on the **residence premises,** or while it is temporarily removed for repairs.

*Property We Do Not Cover Under Coverage C:*

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.

3. Motorized land vehicles, including, but not limited to, any land vehicle powered or assisted by a motor or engine. We do not cover any motorized land vehicle parts, equipment or accessories. We do, however, cover motorized land vehicles and their parts, equipment and accessories used solely for the service of the **residence**

Page 10

**premises** if not licensed for use on public roads.

4. Aircraft and aircraft parts.

5. Watercraft, including their trailers, furnishings, equipment and motors.

6. Outdoor signs.

7. Property of roomers, boarders or **tenants**.

8. Any device, cellular communication system, radar signal reception system, accessory or antenna designed for reproducing, detecting, receiving, transmitting, recording or playing back data, sound or picture which may be powered by electricity from a motorized land vehicle or watercraft.

9. Satellite dish antennas and their systems.

*Losses We Cover Under Coverage C:*
We will cover sudden and accidental direct physical loss to the property described in **Coverage C — Personal Property Protection**, except as limited or excluded in this policy, caused by:

1. Fire or lightning.

   However, **we** do not cover loss caused by fire resulting from **vandalism** if your **dwelling** has been vacant or unoccupied for more than 90 consecutive days immediately prior to the **vandalism**.

2. Windstorm or hail.

   We do not cover loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall.

3. Explosion.

4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

   **We** do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations.

8. Falling objects.

   We do not cover loss to personal property inside a **building structure** unless the falling object first damages an exterior wall or roof of the **building structure**. Damage to the falling object itself is not covered.

9. Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

10. Increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring.

11. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection

Page 11

system, or from a household appliance due to accidental discharge or overflow.

We do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system or a household appliance.

We do not cover loss to any covered property in a **building structure** or any **rental unit** at the **residence premises** under perils 12), 13), and 14) caused by or resulting from freezing while the **building structure** or any **rental unit** in that **building structure** is vacant, unoccupied or under construction unless **you** have used reasonable care to:

a) maintain heat in the **building structure** including all **rental units**; or

b) shut off the water supply and drain the system and appliances in the **building structure**.

*Losses We Do Not Cover Under Coverage C:*

A. We do not cover loss to the property described in **Coverage C — Personal Property Protection** consisting of or caused by:

1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water

which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

We do cover sudden and accidental direct physical loss caused by fire or explosion resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth.

This exclusion applies whether or not the earth movement is combined with water.

We do cover sudden and accidental direct physical loss caused by fire, explosion or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**.

We do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is

Page 12

endangered by a cause of loss we cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person.**

9. Intentional or criminal acts of, or at the direction of, **an insured person,** if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether an **insured person** is actually charged with, or convicted of, a crime.

10. Any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
    a) lead in any form;
    b) asbestos in any form;
    c) radon in any form; or
    d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises.**

11. Weather conditions that contribute in any way with a cause of loss excluded under **Losses We Do Not Cover Under Coverage C** to produce a loss.

12. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance

of property whether on or off the **residence premises** by any person or organization.

B. We do not cover loss to the property described in **Coverage C — Personal Property Protection** when:
   1) there are two or more causes of loss to the property; and
   2) the predominant cause(s) of loss is (are) excluded under items A.1 through A.12 above.

C. We do not cover loss to the property described in **Coverage C — Personal Property Protection** consisting of or caused by mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

   This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I Conditions — Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

D. We do not cover loss to the property described in **Coverage C — Personal Property Protection** consisting of or caused by the following. These exclusions apply regardless of whether any other cause contributed concurrently or in any sequence to produce the loss:
   1) Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

      We do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

Page 13

2)   War or warlike acts, including, but not
limited to, insurrection, rebellion or
revolution.

*Coverage D*
*Fair Rental Income*

**We Will Cover Under Coverage D:**

1.   **Your** lost fair rental income resulting from a
covered loss, less charges and expenses
which do not continue, when a loss we
cover under **Coverage A—Dwelling
Protection** makes a **rental unit**
uninhabitable. **We** will pay for lost fair rental
income for the shortest time required to
either repair or replace the **rental unit**, but
not to exceed 12 months from the date of
the loss which made the **rental unit**
uninhabitable.

2.   **Your** lost fair rental income, less charges
and expenses which do not continue, for up
to two weeks should civil authorities
prohibit use of the **dwelling** due to a loss at
a neighboring premises caused by a peril
we insure against under this policy.

However, payments for **your** lost fair rental income
due to remediation of mold, fungus, wet rot or dry
rot will not be paid in addition to any payments paid
or payable under **Section I Conditions—Mold,
Fungus, Wet Rot and Dry Rot Remediation as a
Direct Result of a Covered Water Loss.**

These periods of time are not limited by the
termination of this policy.

This protection begins only after **you** have given **us**
notice of the covered loss and only if, at the time of
the loss, the **rental unit** was habitable and:
   a)   occupied by a **tenant**; or
   b)   **you** had a signed, written rental
agreement for the **rental unit**, in which
case this protection begins on the
occupancy date specified in the rental
agreement; or

   c)   the **rental unit** was occupied by a **tenant**
within 60 days of the loss and was in the
process of being renovated.

**We** do not cover loss or expense due to the
cancellation of a lease or agreement.

No deductible applies to this protection.

*Section I Additional Protection*

1.   **Debris Removal**
**We** will pay reasonable expenses **you** incur
to remove debris of covered property
damaged by a loss **we** cover. If the loss to
the covered property and the cost of debris
removal are more than the Limit Of Liability
shown on the Policy Declarations for the
covered property, **we** will pay up to an
additional 5% of that limit for debris
removal.

2.   **Trees, Shrubs, Plants and Lawns**
**We** will pay up to an additional 5% of the Limit
Of Liability shown on the Policy Declarations
under **Coverage A—Dwelling Protection** for
loss to trees, shrubs, plants and lawns at the
address of the **residence premises**. **We** will
not pay more than $500 for any one tree,
shrub, or plant, including expenses incurred
for removing debris. This coverage applies
only to direct physical loss caused by fire or
lightning, explosion, riot or civil commotion,
aircraft, vehicles, theft or collapse of a
**building structure** or any part of a **building
structure.**

**We** will pay up to $500 for reasonable
expenses **you** incur for the removal of debris
of trees at the address of the **residence
premises** for direct physical loss caused by
windstorm, hail, or weight of ice, snow or
sleet. The fallen tree must have caused
damage to property covered under **Coverage
A—Dwelling Protection** or **Coverage B—
Other Structures Protection.**

**We** do not cover trees, shrubs, plants, or
lawns grown for **business** purposes.

Page 14

3. **Emergency Removal of Property**
We will pay for sudden and accidental direct physical loss to covered property from any cause while removed from the **residence premises** because of danger from a loss **we** cover. Protection is limited to a 30 day period from the date of removal. This protection does not increase the limit of liability that applies to the covered property.

4. **Fire Department Charges**
We will pay up to $500 for service charges made by fire departments called to protect your property from a loss **we** cover at the **residence premises**. No deductible applies to this protection.

5. **Temporary Repairs After a Loss**
We will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

6. **Arson Reward**
We will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under Section I of this policy. The $5,000 limit applies regardless of the number of persons providing information.

7. **Collapse**
We will cover at the **residence premises**:
   a) the entire collapse of a covered **building structure**;
   b) the entire collapse of part of a covered **building structure**; and
   c) direct physical loss to covered property caused by a) or b) above.

For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a sudden and accidental direct physical loss caused by one or more of the following:

a) a loss **we** cover under **Section I, Coverage C — Personal Property Protection;**
b) weight of persons, animals, equipment or contents;
c) weight of rain or snow which collects on a roof;
d) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

We will not cover the collapse of underground septic tanks, fuel oil tanks, cess pools, cisterns or similar structures.

Loss to an awning, fence, patio, deck, pavement, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock is not included, unless the loss is a direct result of the collapse of a **building structure** or part of a **building structure** that is a sudden and accidental direct physical loss caused by one or more of the following:
a) a loss **we** cover under **Section I, Coverage C — Personal Property Protection;**
b) weight of persons, animals, equipment or contents; weight of rain or snow which collects on a roof;
c) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Collapse as referenced herein means the covered **building structure** or part of the covered **building structure** has actually fallen down or fallen into pieces unexpectedly and instantaneously. It does not include settling, cracking, shrinking, bulging, expansion, sagging, or bowing. Furthermore, collapse does not include or mean substantial structural impairment or imminent collapse.

This protection does not change the limit of liability applying to the covered property.

Page 15

8.  **Land**
    If a sudden and accidental direct physical loss results in both a covered loss to your **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to $10,000 for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of **your dwelling** sustaining the covered loss.

    The **Losses We Do Not Cover Under Coverages A and B** reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

### Section I Conditions

1.  **Deductible**
    **We** will pay when a covered loss exceeds the deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless we have indicated otherwise in this policy.

2.  **Insurable Interest and Our Liability**
    In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3.  **What You Must Do After a Loss**
    In the event of a loss to any property that may be covered by this policy, **you** must:
    a)  promptly give us or **our** agent notice. Report any loss involving theft, **vandalism** or burglary to the police as soon as possible.
    b)  protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
    c)  separate damaged from undamaged personal property. Give us a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost,

actual cash value and the amount of loss claimed.
    d)  give us all accounting records, bills, invoices and other vouchers, or certified copies, which we may reasonably request to examine, and permit **us** to make copies.
    e)  produce records supporting any claim for loss of fair rental income as often as **we** reasonably require.
    f)  as often as **we** reasonably require:
        1)  show us the damaged property.
        2)  at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person**, and sign a transcript of the same.
        3)  produce representatives, employees, members of the insured's household or others to the extent it is within the **insured person's** power to do so; and
        4)  cooperate with **us** in the investigation or settlement of the claim, including providing available information concerning tenants; and
    g)  within 60 days after the loss, give us a signed, sworn proof of the loss. This statement must include the following information:
        1)  the date, time, location and cause of the loss;
        2)  the interest **insured persons** and others have in the property, including any encumbrances;
        3)  the actual cash value and amount of loss for each item damaged, destroyed or stolen;
        4)  any other insurance that may cover the loss;
        5)  any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
        6)  at **our** request, the specifications of any damaged **building structure** or other structure.

Page 16

We have no duty to provide coverage under this section if you, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to us.

4. **Our Settlement Options**
   In the event of a covered loss, **we** have the option to:
   a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen covered property with property of like kind and quality within a reasonable time; or
   b) pay for all or any part of the damaged, destroyed or stolen property as described in **Condition 5 How We Pay For a Loss.**

   Within 30 days after we receive your signed, sworn proof of loss, **we** will notify **you** of the option or options we intend to exercise.

5. **How We Pay For a Loss**
   Under **Coverage A – Dwelling Protection, Coverage B – Other Structures Protection** and **Coverage C – Personal Property Protection,** payment for covered loss will be by one or more of the following methods:
   a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:
      1) the whole amount of loss for property covered under **Coverage A – Dwelling Protection** and **Coverage B – Other Structures Protection,** without deduction for depreciation, is less than $2,500 and the property is not excluded from the Building Structure Reimbursement provision; or,
      2) the whole amount of loss for property covered under **Coverage C – Personal Property Protection,** without deduction for depreciation, is less than $2,500, **your** Policy

Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

   b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the Limit Of Liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

   If applicable, **you** may make claim for additional payment as described in paragraph c) and paragraph d) below if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

   c) Building Structure Reimbursement. Under **Coverage A – Dwelling Protection and Coverage B – Other Structures Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a building structure damaged by a covered loss.

   This additional payment shall not include any amounts which may be paid or payable under **Section I Conditions – Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss,** and shall not be

**Page 17**

payable for any losses excluded in **Section I – Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, item C.

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1) the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for the same use on the same premises;

2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for the same use on the same premises; or

3) the Limit Of Liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A – Dwelling Protection** or **Coverage B – Other Structures Protection**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If you replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2), or 3) above.

Building Structure Reimbursement will not apply to:

1) property covered under **Coverage C – Personal Property Protection**;

2) property covered under **Coverage B – Other Structures Protection** that is not a **building structure**;

3) wall-to-wall carpeting, ceramic or vinyl floor coverings, hardwood floors, built-in appliances, fences, awnings and outdoor antennas whether or not fastened to a **building structure**; or

4) land.

Payment under a, b, or c above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures.

d) Personal Property Reimbursement. When the Policy Declarations shows that the Personal Property Reimbursement provision applies under **Coverage C – Personal Property Protection**, we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;

2) the cost of repair or restoration; or

3) the Limit Of Liability shown on the Policy Declarations for **Coverage C – Personal Property Protection**.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal

Page 18

property and the smallest of 1), 2), or 3) above.

Personal Property Reimbursement will not apply to:
1) property insured under **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection;**
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs and collector's items;
4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss; or
5) wall-to-wall carpeting.

6. **Our Settlement of Loss**
**We** will settle any covered loss with **you** unless some other person or entity is named in the policy. **We** will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award, or by court judgment.

7. **Appraisal**
If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual

cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to you and to us, the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by the appraisers or an appraiser and the umpire will determine the amount of loss.

Each party will pay the appraiser it chooses and equally bear expenses for the umpire and all other appraisal expenses.

8. **Abandoned Property**
**We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person.**

9. **Mortgagee**
A covered loss will be payable to the mortgagees named on the Policy Declarations to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person,** failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b) give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:
a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;
b) pay upon demand any premium due if an **insured person** fails to do so;
c) notify **us** in writing of any change of ownership or occupancy or any

Page 19

increase in hazard of which the mortgagee has knowledge;

d) give us the mortgagee's right of recovery against any party liable for loss; and

e) after a loss, and at our option, permit us to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgage interest provision shall apply to any trustee, loss payee or other secured party.

10. **Permission Granted to You**

a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction is not considered vacant or unoccupied.

b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

11. **Our Rights to Recover Payment**
When **we** pay for any loss, an **insured person's** rights to recover from anyone else become **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

**You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

12. **Our Rights to Obtain Salvage**
**We** have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

**We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain

all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

13. **Action Against Us**
No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which **Section I Conditions** applies, unless:

a) there has been full compliance with all policy terms; and

b) the action is commenced within one year after the inception of loss or damage.

14. **Loss to a Pair or Set**
If there is a covered loss to a pair or set, **we** may:

a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or

b) pay the difference between the actual cash value of the pair or set before and after the loss.

15. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

16. **No Benefit to Bailee**
This insurance will not benefit any person or organization who may be caring for or handling **your** property for a fee.

17. **Other Insurance**
If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a covered loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

18. **Property Insurance Adjustment**
When the Policy Declarations indicates that the Property Insurance Adjustment Condition

Page 20

applies, **you** agree that, at each policy anniversary, **we** may increase the limit of liability shown on the Policy Declarations for **Coverage A—Dwelling Protection** to reflect one of the following:

a) the rate of change in the Index identified in the Important Payment and Coverage Information section of the Policy Declarations. The limit of liability for **Coverage A—Dwelling Protection** for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the Index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1000; or

b) the minimum amount of insurance coverage **we** are willing to issue for the succeeding premium period under **Coverage A—Dwelling Protection** for **your** dwelling and other property **we** cover under **Coverage A—Dwelling Protection.**

Any adjustment in the limit of liability for **Coverage A—Dwelling Protection** will result in an adjustment in the limit of liability for **Coverage B—Other Structures Protection** and **Coverage C—Personal Property Protection** in accordance with **our** manual of Rules and Rates.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **us** at the time a change in limits is made.

**We** will not reduce the limit of liability shown on the Policy Declarations without **your** consent. **You** agree that it is **your** responsibility to ensure that each of the limits of liability shown on the Policy Declarations are appropriate for **your** insurance needs. If **you** want to increase or decrease any of the limits of liability shown on the Policy Declarations, **you** must contact **us** to request such a change.

19. **Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**
In the event of a covered water loss under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C —Personal Property Protection**, **we** will pay up to $5,000 for mold, fungus, wet rot or dry rot **remediation.**

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C —Personal Property Protection** damaged by a covered water loss. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This does not increase the limits of liability under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection.**

## SECTION II—LIABILITY PROTECTION AND PREMISES MEDICAL PROTECTION

### Coverage X
### Liability Protection

**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitations of this policy, **we** will pay compensatory damages which an **insured person** becomes legally obligated to pay because of **bodily injury, personal injury,** or **property damage** arising from a covered **occurrence. We** will not pay any punitive or exemplary damages, fines or penalties.

**We** may investigate or settle any claim or suit for covered damages against an **insured person.** If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even

Page 21

If the allegations are groundless, false or fraudulent. We are not obligated to defend any suit or pay any claim or judgment after we have exhausted our limit of liability.

*Losses We Do Not Cover Under Coverage X:*

1. We do not cover **bodily injury, personal injury, or property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an **insured person**. This exclusion applies even if:
   a) an **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury, personal injury** or **property damage** is of a different kind or degree then intended or reasonably expected; or
   c) such **bodily injury, personal injury**, or **property damage** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether an **insured person** is actually charged with, or convicted of, a crime.

2. We do not cover **bodily injury** or **personal injury** to an insured person.

3. We do not cover **property damage** to any:
   a) property owned by an **insured person**;
   b) property owned by others which an **insured person** agreed to insure or for which an **insured person** agreed to be responsible; or
   c) property rented to, occupied or used by, or in the care of an **insured person**.

4. We do not cover **bodily injury** or **personal injury** to any person eligible to receive benefits required to be provided or voluntarily provided under any **insured person** under any workers compensation law, non–occupational disability law, occupational disease law, disability benefits law, or any other similar law.

5. We do not cover **bodily injury, personal injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any:
   a) aircraft;
   b) watercraft; or
   c) motorized land vehicle or trailer other than lawn and garden implements under 40 motor horsepower.

6. We do not cover **bodily injury, personal injury** or **property damage** arising out of the negligent supervision by an **insured person** of any person.

7. We do not cover any liability imposed on any **insured person** by any governmental authority arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any:
   a) aircraft;
   b) watercraft; or
   c) motorized land vehicle or trailer other than lawn and garden implements under 40 motor horsepower.

8. We do not cover **bodily injury** or **personal injury** which results in any manner from any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
   a) lead in any form;
   b) asbestos in any form;
   c) radon in any form; or
   d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

   However, we do cover **bodily injury** which results from the sudden and accidental discharge, dispersal, release or escape of carbon monoxide from a heating system, an appliance for heating water, or a household appliance located at the **residence premises**.

9. We do not cover **property damage** consisting of or caused by any type of

Page 22

vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
a) lead in any form;
b) asbestos in any form;
c) radon in any form; or
d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

10. We do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury** or **personal injury** which results in any manner from, or for **property damage** consisting of or caused by, any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
a) lead in any form;
b) asbestos in any form;
c) radon in any form; or
d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

11. We do not cover any loss, cost or expense arising out of any request, demand, or order that any **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or access the effects of any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
a) lead in any form;
b) asbestos in any form;
c) radon in any form; or
d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

12. We do not cover **bodily injury**, **personal injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

13. We do not cover **bodily injury**, **personal injury** or **property damage** arising out of the past or present business activities of an **insured person**.

14. We do not cover **bodily injury**, **personal injury** or **property damage** arising out of any premises, other than the **residence premises**, owned, rented or controlled by an **insured person**.

15. We do not cover **bodily injury**, **personal injury** or **property damage** arising from any contract or agreement, whether written or oral.

16. We do not cover **bodily injury**, **personal injury** or **property damage** caused by war or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

17. We do not cover **bodily injury**, **personal injury** or **property damage** for which an **insured person** may be held legally liable arising out of the sale, distribution, manufacture, service, use or gift of any alcoholic beverage(s) or any controlled or illegal substances.

18. We do not cover **personal injury** caused by a violation of a law or ordinance committed:
a) by an **insured person**; or
b) with an **insured person's** knowledge or consent.

19. We do not cover **personal injury** to any person if the **personal injury** arises from that person's employment by an **insured person**.

20. We do not cover **personal injury** arising from the publication of libelous or defamatory remarks or from the utterance of slanderous or defamatory remarks:
a) if the initial publication or utterance of the same or similar material by or on behalf of an **insured person** occurred prior to the effective date of this insurance.

Page 23

b)  made by or at the direction of an **insured person** with awareness of the falsity of such remarks.

21.  We do not cover **personal injury** arising from illegal discrimination.

22.  We do not cover **bodily injury, personal injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

23.  We do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury, personal injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

*Coverage Y*
*Premises Medical Protection*

*Losses We Cover Under Coverage Y:*

**We** will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** resulting in **bodily injury** covered by this part of the policy.

Payment will be made only if **bodily injury**:
1.  arises from a condition on the **residence premises** or immediately adjoining ways; or
2.  arises from an **occurrence** for which indemnification is provided under **Coverage X -- Liability Protection** of this policy.

*Losses We Do Not Cover Under Coverage Y:*

1.  We do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, an **insured person**.

This exclusion applies even if:

a)  an **insured person** lacks the mental capacity to govern his or her conduct;
b)  such bodily injury is of a different kind or degree than intended or reasonably expected; or
c)  such **bodily injury** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether an **insured person** is actually charged with, or convicted of, a crime.

2.  We do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any workers compensation law, non-occupational disability law, occupational disease law, disability benefits law, or any other similar law.

3.  We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any:
a)  aircraft;
b)  watercraft; or
c)  motorized land vehicle or trailer other than lawn and garden implements under 40 motor horsepower.

4.  We do not cover **bodily injury** arising out of the negligent supervision by an **insured person** of any person.

5.  We do not cover any **bodily injury** to an **insured person**.

6.  We do not cover **bodily injury** which results in any manner from any type of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, irritants, contaminants, or pollutants, including, but not limited to:
a)  lead in any form;
b)  asbestos in any form;
c)  radon in any form; or
d)  oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises.**

**Page 24**

However, we do cover **bodily injury** which results from the sudden and accidental discharge, dispersal, release or escape of carbon monoxide from a heating system, an appliance for heating water, or a household appliance located at the **residence premises.**

7. We do not cover **bodily injury** arising out of the rendering of, or failure to render, professional services by an **insured person.**

8. We do not cover **bodily injury** to any person arising out of a professional service being conducted on the **residence premises** by any person.

9. We do not cover **bodily injury** caused by war or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

10. We do not cover **bodily injury** to any person if the **bodily injury** arises from that person's employment by an **insured person.**

11. We do not cover **bodily injury:**
    a) to a **tenant** if the **bodily injury** occurs on the part of the **residence premises** rented from an **insured person;** or
    b) to an employee of a **tenant** if the **bodily injury** arises out of employment by the **tenant.**

12. We do not cover **bodily injury** to any person engaged in:
    a) maintenance or repair of the **residence premises;**
    b) alteration, demolition or new construction at the **residence premises.**

13. We do not cover **bodily injury** arising out of the sale, distribution, manufacture, service, use or gift of any alcoholic beverage(s) or any controlled or illegal substances.

14. We do not cover **bodily injury** or **personal injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

## Section II – Additional Protection
We will pay, in addition to the applicable limits of liability:

1. **Claim Expense**
   We will pay:
   a) all costs we incur in the settlement of any claim or the defense of any suit against an **insured person;**
   b) interest accruing on damages awarded until such time as we have paid, formally offered, or deposited in court the amount for which we are liable under this policy. Interest will be paid only on damages which do not exceed our limits of liability;
   c) premiums on bonds required in any suit we defend; we will not pay bond premiums in an amount that is more than our **Coverage X – Liability Protection** limit of liability. We have no obligation to apply for or furnish bonds;
   d) Up to $150 per day for loss of wages and salary when we ask you to attend trials and hearings;
   e) any other reasonable expenses incurred by an **insured person** at our request.

2. **Emergency First Aid**
   We will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an **occurrence** involving **bodily injury** covered under this policy.

## Section II Conditions
1. **What You Must Do After a Loss**
   In the event of **bodily injury, personal injury** or **property damage,** you must do the following:
   a) Promptly notify us or our agent stating:
      1) your name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person;**

    4)   the names and addresses of any witnesses.

b) Promptly send us any legal papers relating to the loss.

c) At our request, an **insured person** will:
1) cooperate with us and assist **us** in any matter concerning a claim or suit;
2) help **us** enforce any right of recovery against any person or organization who may be liable to **an insured person;**
3) attend any hearing or trial;
4) assist us by collecting and giving evidence and obtaining witnesses.

Any **insured person** will not voluntarily pay any money, assume any obligations, or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What an Injured Person Must Do —- Coverage Y — Premises Medical Protection**
If someone is injured, that person, or someone acting for that person, must do the following:
a) Promptly give us written proof of the loss. If **we** request, this must be done under oath.
b) Give us written authorization to obtain copies of all medical records and reports.
c) Permit doctors we select to examine the injured person as often as **we** may reasonably require.

3. **Our Payment of Loss — Coverage Y — Premises Medical Protection**
**We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by us or an **insured person.**

4. **Our Limits of Liability**
Regardless of the number of **insured** persons, injured persons, claims, claimants or policies involved, **our** total liability under **Coverage X — Liability Protection** for damages resulting from one occurrence will

not exceed the Limit Of Liability shown on the Policy Declarations. All **bodily injury, personal injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence.** **Our** total liability under **Coverage Y — Premises Medical Protection** for all medical expenses payable for **bodily injury** to any one person shall not exceed the each person Limit Of Liability shown on the Policy Declarations.

5. **Bankruptcy**
**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person.**

6. **Our Rights to Recover Payment — Coverage X — Liability Protection**
When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Action Against Us**
a) No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, unless there has been full compliance with all policy terms.
b) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Coverage X — Liability Protection,** unless the obligation of an **insured person** to pay has been finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person,** injured person and **us,** and the action against **us** is commenced within one year of such judgment or agreement.
c) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under

Page 26

Coverage Y—Premises Medical Protection, unless such action is commenced within one year after the date the expenses for which coverage is sought were actually incurred.

d)  No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Section II—Additional Protection**, unless such action is commenced within one year after the date the claim expenses or emergency first aid expenses for which coverage is sought were actually incurred.

e)  No one shall have any right to make us a party to an action to determine the liability of an **insured person**.

8.  **Other Insurance—Coverage X—Liability Protection**
    This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

## SECTION III—OPTIONAL PROTECTION

### Optional Coverages You May Buy

The following optional coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1.  **Coverage BC**
    **Building Codes**
    **We** will pay up to 10% of the amount of insurance on the Policy Declarations under **Coverage A—Dwelling Protection** to comply with local building codes after covered loss to **your dwelling** or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating the construction,

reconstruction, maintenance, repair or demolition of **your dwelling**.

2.  **Coverage F**
    **Fire Department Charges**
    The $500 limit applying to the fire department service charges under **Section I Additional Protection** is increased to the amount shown on the Policy Declarations.

3.  **Coverage G**
    **Loss Assessments**
    If **your** ownership of **your dwelling** requires that **you** be a member of, and subject to the rules of, an association governing areas held in common by all building owners as members of the association, **we** will pay **your** share of any special assessment charged against all building owners by the association up to the Limit Of Liability shown on the Policy Declarations, when the assessment is made as a result of:

    a)  sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or

    b)  **bodily injury** or **property damage** covered under **Section II** of this policy.

    However, this optional coverage shall apply only to special assessments made as a result of covered losses occurring while this optional coverage is in force.

    Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

    **We** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property damage** exceeds $500 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

Page 27

In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I and II** of this policy and the **Section I and II Conditions**, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

4. **Coverage SD**
**Satellite Dish Antennas**
**Coverage C — Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to your satellite dish antennas and their systems on **your residence premises**, subject to the provisions of **Coverage C — Personal Property Protection.** The amount of coverage is shown on the Policy Declarations.

Page 28

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy—Keep It With Your Policy*

## STANDARD FIRE POLICY PROVISIONS — AU277-2

This form contains the provisions of the Standard Fire Policy. Whenever the terms and provisions of Section I can be construed to perform a liberalization of the provisions found in the Standard Fire Policy, the terms and provisions of Section I shall apply.

**In Consideration of the Provisions and Stipulations Herein or Added Hereto and of the Premium Specified in the Declarations** (or specified in endorsement attached thereto), Allstate, for the term shown in the Declarations from inception date shown in the Declarations until cancelled or expiration at location of property involved, to an amount not exceeding the limit of liablity specified, does insure the Insured named in the Declarations and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance of any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest of the Insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described herein while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of Allstate.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

Page 1

| | | |
|---|---|---|
| 1 | **Concealment,** | This entire policy shall be void if, whether |
| 2 | **fraud.** | before or after a loss, the insured has wil- |
| 3 | | fully concealed or misrepresented any ma- |
| 4 | terial fact or circumstance concerning this insurance or the |
| 5 | subject thereof, or the interest of the insured therein, or in case |
| 6 | of any fraud or false swearing by the insured relating thereto. |
| 7 | **Uninsurable** | This policy shall not cover accounts, bills, |
| 8 | **and** | currency, deeds,evidences of debt, money or |
| 9 | **excepted property.** | securities; nor, unless specifically named |
| 10 | | hereon in writing, bullion or manuscripts. |
| 11 | **Perils not** | This Company shall not be liable for loss by |
| 12 | **included.** | fire or other perils insured against in this |
| 13 | | policy caused, directly or indirectly, by: (a) |
| 14 | enemy attack by armed forces, including action taken by mili- |
| 15 | tary, naval or air forces in resisting an actual or an immediately |
| 16 | impending enemy attack; (b) invasion; (c) insurrection; (d) |
| 17 | rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) |
| 18 | order of any civil authority except acts of destruction at the time |
| 19 | of and for the purpose of preventing the spread of fire, provided |
| 20 | that such fire did not originate from any of the perils excluded |
| 21 | by this policy; (i) neglect of the insured to use all reasonable |
| 22 | means to save and preserve the property at and after a loss, or |
| 23 | when the property is endangered by fire in neighboring prem- |
| 24 | ises; (j) nor shall this Company be liable for loss by theft. |
| 25 | **Other insurance** | Other insurance may be prohibited or the |
| 26 | | amount of insurance may be limited by en- |
| 27 | dorsement attached hereto. |
| 28 | **Conditions suspending or restricting insurance. Unless** |
| 29 | **otherwise provided in writing added hereto this Company** |
| 30 | **shall not be liable for loss occurring** |
| 31 | (a) while the hazard is increased by any means within the con- |
| 32 | trol or knowledge of the insured; or |
| 33 | (b) while a described building, whether intended for occupancy |
| 34 | by owner or tenant, is vacant or unoccupied beyond a period of |
| 35 | sixty consecutive days; or |
| 36 | (c) as a result of explosion or riot, unless fire ensue, and in |
| 37 | that event for loss by fire only. |
| 38 | **Other perils** | Any other peril to be insured against or sub- |
| 39 | **or subjects.** | ject of insurance to be covered in this policy |
| 40 | | shall be by endorsement in writing hereon or |
| 41 | added hereto. |
| 42 | **Added provisions.** | The extent of the application of insurance |
| 43 | | under this policy and of the contribution to |
| 44 | he made by this Company in case of loss, and any other pro- |
| 45 | vision or agreement not inconsistent with the provisions of this |
| 46 | policy, may be provided for in writing added hereto, but no pro- |
| 47 | vision may be waived except such as by the terms of this policy |
| 48 | is subject to change. |
| 49 | **Waiver** | No permission affecting this insurance shall |
| 50 | **provisions.** | exist, or waiver of any provision be valid, |

Page 2

51                  unless granted herein or expressed in writing
52 added hereto. No provision, stipulation or forfeiture shall be
53 held to be waived by any requirement or proceeding on the part
54 of this Company relating to appraisal or to any examination
55 provided for herein.
56 **Cancellation**        This policy shall be cancelled at any time
57 **of policy.**           at the request of the insured, in which case
58                  this Company shall, upon demand and sur-
59 render of this policy, refund the excess of paid premium above
60 the customary short rates for the expired time. This pol-
61 icy may be cancelled at any time by this Company by giving
62 to the insured a five days' written notice of cancellation with
63 or without tender of the excess of paid premium above the pro
64 rata premium for the expired time, which excess, if not ten-
65 dered, shall be refunded on demand. Notice of cancellation shall
66 state that said excess premium (if not tendered) will be re-
67 funded on demand.
68 **Mortgage**          If loss hereunder is made payable, in whole
69 **interests and**      or in part, to a designated mortgagee not
70 **obligations.**        named herein as the insured, such interest in
71                  this policy may be cancelled by giving to such
72                  mortgagee a ten days' written notice of can-
73 cellation.
74 If the insured fails to render proof of loss such mortgagee, upon
75 notice, shall render proof of loss in the form herein specified
76 within sixty (60) days thereafter and shall be subject to the pro-
77 visions hereof relating to appraisal and time of payment and of
78 bringing suit. If this Company shall claim that no liability ex-
79 isted as to the mortgagor or owner, it shall, to the extend of pay-
80 ment of loss to the mortgagee, be subrogated to all the mort-
81 gagee's rights of recovery, but without impairing mortgagee's
82 right to sue; or it may pay off the mortgage debt and require
83 an assignment thereof and of the mortgage. Other provisions
84 relating to the interests and obligations of such mortgagee may
85 be added hereto by agreement in writing.
86 **Pro rata liability.**     This Company shall not be liable for a greater
87                  proportion of any loss than the amount
88 hereby insured shall bear to the whole insurance covering the
89 property against the peril involved, whether collectible or not.
90 **Requirements in**    The insured shall give immediate written
91 **case loss occurs.**   notice to this Company of any loss, protect
92                  the property from further damage, forthwith
93 separate the damaged and undamaged personal property, put
94 it in the best possible order, furnish a complete inventory of
95 the destroyed, damaged and undamaged property, showing in
96 detail quantities, costs, actual cash value and amount of loss
97 claimed; and within sixty days after the loss, unless such time
98 **is extended in writing by this Company, the insured shall render**
99 **to this Company a proof of loss, signed and sworn to by the**
100 insured, stating the knowledge and belief of the insured as to
101 the following: the time and origin of the loss, the interest of the

Page 3

102 insured and of all others in the property, the actual cash value of
103 each item thereof and the amount of loss thereto, all encum-
104 brances thereon, all other contracts of insurance, whether valid
105 or not, covering any of said property, any changes in the title,
106 use, occupation, location, possession or exposures of said prop-
107 erty since the issuing of this policy, by whom and for what
108 purpose any building herein described and the several parts
109 thereof were occupied at the time of loss and whether or not it
110 then stood on leased ground, and shall furnish a copy of all the
111 descriptions and schedules in all policies and, if required, verified
112 plans and specifications of any building, fixtures or machinery
113 destroyed or damaged. The insured, as often as may be reason-
114 ably required, shall exhibit to any person designated by this
115 Company all that remains of any property herein described, and
116 submit to examinations under oath by any person named by this
117 Company, and subscribe the same; and, as often as may be
118 reasonably required, shall produce for examination all books of
119 account, bills, invoices and other vouchers, or certified copies
120 thereof if originals be lost, at such reasonable time and place as
121 may be designated by this Company or its representative, and
122 shall permit extracts and copies thereof to be made.

123 **Appraisal.**        In case the insured and this Company shall
124                       fail to agree as to the actual cash value or
125 the amount of loss, then, on the written demand of either, each
126 shall select a competent and disinterested appraiser and notify
127 the other of the appraiser selected within twenty days of such
128 demand. The appraisers shall first select a competent and dis-
129 interested umpire; and failing for fifteen days to agree upon
130 such umpire, then, on request of the insured or this Company,
131 such umpire shall be selected by a judge of a court of record in
132 the state in which the property covered is located. The ap-
133 praisers shall then appraise the loss, stating separately actual
134 cash value and loss to each item; and, failing to agree, shall
135 submit their differences, only, to the umpire. An award in writ-
136 ing, so itemized, of any two when filed with this Company shall
137 determine the amount of actual cash value and loss. Each
138 appraiser shall be paid by the party selecting him and the ex-
139 penses of appraisal and umpire shall be paid by the parties
140 equally.

141 **Company's**          It shall be optional with this Company to
142 **options.**           take all, or any part, of the property at the
143                        agreed or appraised value, and also to re-
144 pair, rebuild or replace the property destroyed or damaged with
145 other of like kind and quality within a reasonable time, on giv-
146 ing notice of its intention so to do within thirty days after the
147 receipt of the proof of loss herein required.

148 **Abandonment.**       There can be no abandonment to this Com-
149                        pany of any property.

150 **When loss**          The amount of loss for which this Company
151 **payable.**           may be liable shall be payable sixty days
152                        after proof of loss, as herein provided, is

Page 4

153 received by this Company and ascertainment of the loss is made
154 either by agreement between the Insured and this Company ex-
155 pressed in writing or by the filing with this Company of an
156 award as herein provided.
157 **Suit.**                        No suit or action on this policy for the recov-
158                                  ery of any claim shall be sustainable in any
159 court of law or equity unless all the requirements of this policy
160 shall have been complied with, and unless commenced within
161 twelve months next after inception of the loss.
162 **Subrogation.**              This Company may require from the Insured
163                              an assignment of all right of recovery against
164 any party for loss to the extend that payment therefor is made
165 by this Company.

## SPECIAL STATE PROVISIONS

**IDAHO:**     The word "five" in line 62 of the provisions hereinafter is changed to "thirty"
**OREGON:**    The word "five" in line 62 of the provisions hereinafter is changed to "thirty". The words
               "Sixty days after the loss" in line 97 of the provisions hereinafter are changed to "ninety
               days after receipt of proof of loss forms from the Company".

**Page 5**

# Exhibit B



**Allstate**
You're in good hands.

Tempe Central Property
222 S. MILL AVE. STE 501
TEMPE AZ 85281

DONNY HERNANDEZ
PO BOX 920664
EL PASO TX 799020012

February 24, 2015

INSURED: DONNY HERNANDEZ
DATE OF LOSS: January 01, 2015
CLAIM NUMBER: 0356743260 SCO

PHONE NUMBER: 800-639-7304
FAX NUMBER: 866-361-2984
OFFICE HOURS: Mon - Fri 8:00 am - 4:30 pm

Dear MR. DONNY HERNANDEZ,

Thank you for reporting the above referenced claim to the ALLSTATE INSURANCE COMPANY.

Based on the information obtained, we are sorry to inform you that your claim is not covered under your policy.

Unfortunately, your claim falls within the provisions of your Allstate Landlord Package Policy as stated below in part.
Policy Form AS84 under Section I - Your Property states:

*Losses We Do Not Cover Under Coverages A and B:*

*A. We do not cover loss to the property described in Coverage A Dwelling Protection or Coverage B Other Structures
Protection consisting of or caused by:*

*13. a) Wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;*
   *b) Mechanical breakdown;*
   *c) Growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of
   the ground;*
   *d) Rust or other corrosion;*
   *e) Contamination, including, but not limited to, the presence of toxic, noxious, or hazardous gasses,
   chemicals, liquids, solids or other substances at the residence premises or in the air, land or water
   serving the residence premises;*
   *f) Smog, smoke from the manufacturing of any controlled substance, agricultural smudging and
   industrial operations;*
   *g) Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors,
   roofs or ceilings;*
   *h) Insects, rodents, birds or domestic animals. We do cover the breakage of glass or safety glazing
   materials caused by birds; or*
   *i) Seizure by government authority.*

*If any of a) through h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air
conditioning system, household appliance or fire protective sprinkler system within your dwelling, we cover the direct
physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise
excluded, we will cover the cost of tearing out and replacing any part of your dwelling necessary to repair the system or
appliance. This does not include damage to the defective system or appliance from which the water escaped.*

*19. Any act of a tenant, or guests of a tenant, unless the act results in sudden and accidental direct physical loss caused by:*
   *a) fire;*

0356743260 SCO

b) explosion;
c) vehicles;
d) smoke. However, we do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations;
e) increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring;
f) bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water;
g) water or steam that escapes, due to accidental discharge or overflow, from a plumbing, heating or air conditioning system, an automatic fire protection system, or a household appliance; or
h) freezing of a plumbing, heating or air conditioning system or a household appliance.


Specifically, the following facts are the basis for this coverage decision:

The damages presented to us during our inspection on February 17, 2015 were the result of wear and tear, deterioration, domestic animals, and the act of a tenant.  As quoted in part above, your policy excludes coverage for damages that are caused by domestic animals, an act of a tenant, wear and tear and deterioration.  Therefore, your claim for the damages presented during our inspection are not covered under your policy.

We're Here to Help You
Should you have any additional information you wish for us to consider or if you wish to discuss any aspect of this case, including this letter, please do not hesitate to contact us. My cell phone number is 505.681.3926.


Sincerely,

*CAREY O CONNOR*

CAREY O CONNOR
800-639-7304 Ext. 1988526
Allstate Indemnity Company

0356743260 SCO

DONA ANA COUNTY N
FILED IN MY OFFIC
12/19/2016 1:51:26 F
CLAUDE BOWMA
Victor Er

STATE OF NEW MEXICO
COUNTY OF DOÑA ANA
THIRD JUDICIAL DISTRICT COURT

Donny Hernandez,

<div align="center">Plaintiff,</div>

Vs.

<div align="center">D-307-CV-2016-02766<br>Judge Manuel I. Arrieta</div>

Allstate Insurance Company,

<div align="center">Defendant.</div>

<div align="center">

## ORDER REQUIRING SCHEDULING REPORTS
## and a DISCOVERY PLAN, EXPERT WITNESS DISCLOSURE,
## and LIMITING STIPULATIONS TO ENLARGE TIME
## FOR RESPONSIVE PLEADINGS

</div>

**IT IS SO ORDERED:**

A.  Plaintiff shall serve a copy of this order on each defendant with the summons and complaint and file a certificate of such service. Parties other than plaintiffs who assert claims against others who have not been served with this order shall serve a copy of this order on those against whom they assert claims with the pleading asserting such claims and shall file a certificate of such service.

B.  Within sixty (60) days after the complaint is filed, parties of record shall file a Scheduling Report (LR3-502) with copies to opposing parties and the assigned judge. Parties shall confer and are encouraged to file a Joint Scheduling Report, LR3-Form 2.12 NMRA for Track A or LR3-Form 2.13 for Tracks B and C (see *Appendix to the Local Rules for all forms*), or, if they cannot agree, file an individual Scheduling Report, LR3-Form 2.13 NMRA.

C.  Any party who enters the case more than sixty (60) days after the filing of the initial pleading shall file a Scheduling Report within ten (10) days and deliver a copy to the assigned judge.

Case 2:17-cv-00127-SMV-LAM   Document 1-1   Filed 01/26/17   Page 55 of 64


**D.**      If all parties are not of record within sixty (60) days after the filing date of the initial pleading, each party making a claim against one or more absent parties (*Plaintiff for Defendants, Third-Party Plaintiffs for Third-Party Defendants, etc.*) shall, within five (5) business days after the 60th day, file with the court, serve parties of record and deliver a copy to the assigned judge, a written explanation following LR3-Form 2.14 NMRA, "Delay in Putting the Case at Issue".

**E.**      Counsel or parties who do not have attorneys may not stipulate to an enlargement of time greater than fourteen (14) days for the filing of a responsive pleading without a motion and order. The motion shall state with particularity the reason an enlargement is in the best interests of the parties. A copy of the motion and stipulation shall be delivered to all parties as well as counsel. The enlargement requested shall be for a specified time.

**F.**      When all parties have been joined and the case is at issue, the parties shall immediately notify in writing the assigned judge and the alternative dispute resolution coordinator.

**G.**      If appropriate, the court will refer this matter to settlement facilitation under Part VII of the Local Rules of the Third Judicial District Court.

**H.**      For cases subject to arbitration under Local Rule LR3-706 NMRA, the parties may file a written stipulation to waive facilitation with a copy to the ADR coordinator and the assigned judge within sixty (60) days after the initial complaint has been filed or ten (10) days after all parties are joined if LR3-Form 2.14 NMRA has been filed. If the parties cannot stipulate, the party seeking waiver of facilitation may file a motion for relief from facilitation.

**I.**      Within seventy-five (75) days from the date the complaint was filed, or fifteen (15) days after the case is at issue if LR3-Form 2.14 NMRA has been filed, the parties shall either:

     **(1)**      stipulate to a discovery plan and file the stipulation with the court, or

     **(2)**      request a hearing to establish a discovery plan pursuant to Paragraph B of Rule 1-016 NMRA.

(3)     In the absence of a stipulated discovery plan or a timely request from a party for a hearing to establish a discovery plan, the following plan shall go into effect:

Within one hundred (100) days after the complaint was filed or fifteen (15) days after a party has entered the suit, whichever is the later date, each party shall provide to all other parties:

a.      The name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed issues raised by the pleadings, identifying the subjects of the information;

b.      A copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to disputed issues raised by the pleadings;

c.      A computation of any category of damages claimed by the disclosing party, providing copies or making available for inspection and copying the documents or other evidentiary materials and medical records and opinions, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered;

d.      For inspection and copying, any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment;

e.      If the medical condition of a party is at issue, such party shall give a medical release authorization to opposing parties. The parties shall confer regarding the nature and extent of the release and stipulate, if possible. If the parties cannot agree, each party shall file a memorandum with a proposed medical release authorization advocating that party's proposed form to the court. A copy of the

memorandum and proposed form shall be delivered to the assigned judge.  Rule 1-007.1 NMRA shall apply.

J.    Pursuant to Rule 1-026(E) NMRA, parties shall reasonably supplement discovery required in Subparagraphs (3)(a) through (e) of Paragraph I of this Order.

K.    Intent to Call Expert Witness - Disclosure.    No later than sixty (60) days after filing their respective complaint or responsive pleading, all parties shall exchange a "Notice of Intent to Call Expert Witness (es)".  The parties shall list the names, addresses and phone numbers for all anticipated experts, including a brief summary of the subject matter of each witness' testimony.  If an expert has not yet been identified by a party, the parties must list the specialized area(s) in which an expert is anticipated to be retained and a brief summary of the areas or issues on which the expert is expected to testify on.  All parties are to observe their continuing duty to timely supplement discovery and shall further abide by the requirements of section 8 (A-E) of the 07/15/2014 attachment to the scheduling order filed, with respect to each expert listed.

Hon. Manuel I Arrieta, District Court Judge

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

Delivered to Plaintiff on:  December 19, 2016.

Claude Bowman
Clerk of Court

Deputy – Victor A. Eres

3RD JUDICIAL DISTRICT COURT
DONA ANA COUNTY NM
FILED IN MY OFFICE
1/18/2017 4:39:24 PM
CLAUDE BOWMAN
Denika Frank

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT COURT

DONNY HERNANDEZ
      Plaintiff

v.                              No. D-307-CV-2016-02766

ALLSTATE INSURANCE COMPANY
      Defendant

**THE STATE OF NEW MEXICO**

TO:        Allstate Insurance Company, Defendant, by serving any officer of the Residual
           Markets Unit
ADDRESS:  3075 Sanders Road, Suite H2D, Northbrook, IL 60062-3075.

      You are required to serve upon Robert A. Skipworth, Attorney for Plaintiff, an answer or
motion in response to the complaint which is attached to this summons within thirty (30) days
after service of this summons upon you, exclusive of the day of service, and file a copy of your
answer or motion with the court as provided in Rule 1-005 NMRA.

      If you fail to file a timely answer or motion, default judgment may be entered against you
for the relief demanded in the complaint.

                Attorney or attorneys for Plaintiff:        Robert A. Skipworth
                Address and phone number of attorney:  310 N. Mesa, Ste 600, El Paso, TX 79901
                                               (915) 533-0096

      WITNESS the Honorable Manuel I. Arrieta, District Judge of the Third Judicial District
Court of the State of New Mexico, and seal of the District Court of Dona Ana County, New
Mexico this 16th day of December , 2016.



                         Claude Bowman
                         Clerk of the Court

                By: _M Elena Hayes_
                Deputy

THE STATE OF NEW MEXICO
COUNTY OF _Dona Ana_

    I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in Dona Ana County, New Mexico on the _3rd_ day of _January_____, 2017 by delivering a copy of this summons, with a copy of the complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]    to the defendant, _____.

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA.

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]    to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant, _____, and/or by mailing by first class mail to the defendant at _____, a copy of the summons and complaint.

[ ]    to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing to the defendant at _____ and by mailing the summons and complaint by first class mail to the defendant at _____ _____.

[X]    to _Pamala J. Williams_____, an agent authorized to receive service of process for defendant _Allstate Insurance Company, Residual Market Unit._

[ ]    to _____, [parent] [guardian] [custodian] [guardian ad litem] of defendant _____

Fees: _79 04_____

_(signature)_ (David S. Tarango)
(Signature of person making service)

_Private Process Server_
(Title) *if any*

Subscribed and sworn to before me this
_17th_ day of _January_____,
2017.

_(signature)_
Notary Public          9/14/18

3RD JUDICIAL DISTRICT COURT
DONA ANA COUNTY NM
FILED IN MY OFFICE
1/18/2017 4:39:24 PM
CLAUDE BOWMAN
Denika Frank

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT COURT

DONNY HERRNNANDEZ,                          Cause No. D-307-CV-2016-02766
          Plaintiff,

VS.

ALLSTATE INSURANCE COMPANY,
          Defendant,

## CERTIFICATE OF MAILING

I, hereby certify that on this 24TH day of DECEMBER 2016, a true and correct copy of the SUMMONS, PLAINTIFF'S ORIGINAL COMPLAINT and ORDER REQUIRING SCHEDULING REPORTS AND A DISCOVERY PLAN, EXPERT WITNESS DISCLOSURE, AND LIMITING STIPULATIONS TO ENLARGE TIME FOR RESPONSIVE PLEADINGS was mailed to the defendant ALLSTATE INSURANCE COMPANY, by serving any Officer of the Residual Markets Unit, by Certified Mail, Return Receipt, via the U.S. Postal Service, postage pre-paid sufficient to carry it to its destination, properly addressed to the following:

ALLSTATE INSURANCE COMPANY,
Attn: by serving any Officer of the
Residual Markets Unit,
3075 Sanders Road, Suite # H2D,
Northbrook, IL. 60062-3075

By:_____
DAVID S. TARANGO
PO BOX 954
MESILLA PARK, NM. 88047
PRIVATE PROCESS SERVER
(575) 523-9398

SUBSCRIBED and SWORN to before me this 17th day of JANUARY, 2017,

9/14/19
_____        _____
My Commission Expires                  Notary Public

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

NORTHBROOK IL 60042

| Certified Mail Fee | $3.30 | |
| Extra Services & Fees (check box, add fee as appropriate) | $2.79 | |
| ☐ Return Receipt (hardcopy) | $5.00 | |
| ☐ Return Receipt (electronic) | $0.00 | Postmark |
| ☐ Certified Mail Restricted Delivery | $0.00 | Here |
| ☐ Adult Signature Required | | |
| ☐ Adult Signature Restricted Delivery $ | $0.00 | |
| Postage | $3.04 | |
| Total Postage and Fees | $9.04 | |

12/24/2016

Sent To *Allstate Insurance Company - Residential Market Unit*
Street and Apt. No., or PO Box No. *3075 Sanders Road, suite H2D*
City, State, ZIP+4® *Northbrook, IL. 60062-3075*

PS Form 3800, April 2015 PSN 7530-02-000-9047   See Reverse for Instructions

7015 3010 0000 0093 1273

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Allstate Insurance Company*
*Attn: Any Officer of the*
*Residual Market Unit*
*3075 Sanders Road, ste #H2D*
*Northbrook, IL. 60062-3075*

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9403 0453 5169 1454 75

2. Article Number (Transfer from service label)

7015 3010 0000 0093 1273

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053   Domestic Return Receipt

 CT Corporation

**Service of Process Transmittal**
01/17/2017
CT Log Number 530504570

TO:  Shelby Fields
Allstate Insurance Company
MCO Office, 3600 NW 138th St., Ste. 200
Oklahoma City, OK 73134

RE:  **Process Served in New Mexico**

FOR:  Allstate Insurance Company  (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS DIRECTED TO CT BY THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Donny Hernandez, Pltf. vs. Allstate Insurance Company, Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Dona ana County - Third Judicial District Court, NM<br>Case # D307CV201602766 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **DATE AND HOUR OF SERVICE:** | -- |
| **DATE AND METHOD DOCUMENT WAS DELIVERED TO CT:** | By Electronic Receipt on 01/17/2017 at 11:15 Uploaded by Aspen Sprague at Allstate Insurance Company; Confirmation# 88732 |
| **JURISDICTION SERVED :** | New Mexico |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, Exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Robert A. Skipworth<br>310 N. Mesa<br>suite 600<br>El Paso, TX 79901<br>915-533-0096 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/18/2017, Expected Purge Date: 01/23/2017 |
| | Image SOP |
| | Email Notification,  Shelby Fields  shelby.fields@allstate.com |
| | Email Notification,  Drew Schowengerdt  drew.schowengerdt@allstate.com |
| | Email Notification,  Milt Thulin  Milt.Thulin@allstate.com |
| **CT CONTACT INFO :** | Global Processing Center<br>800-592-9023 |

Page 1 of  1 / CM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT COURT

INTAKE UNIT

JAN 11 2017

DONNY HERNANDEZ
      Plaintiff

v.                              No. D-307-CV-2016-02766

ALLSTATE INSURANCE COMPANY
      Defendant

**THE STATE OF NEW MEXICO**

TO:      Allstate Insurance Company, Defendant, by serving any officer of the Residual
             Markets Unit
ADDRESS:   3075 Sanders Road, Suite H2D, Northbrook, IL 60062-3075.

      You are required to serve upon Robert A. Skipworth, Attorney for Plaintiff, an answer or
motion in response to the complaint which is attached to this summons within thirty (30) days
after service of this summons upon you, exclusive of the day of service, and file a copy of your
answer or motion with the court as provided in Rule 1-005 NMRA.

      If you fail to file a timely answer or motion, default judgment may be entered against you
for the relief demanded in the complaint.

      Attorney or attorneys for Plaintiff:     Robert A. Skipworth
      Address and phone number of attorney:  310 N. Mesa, Ste 600, El Paso, TX 79901
                                      (915) 533-0096

      WITNESS the Honorable Manuel I. Arrieta, District Judge of the Third Judicial District
Court of the State of New Mexico, and seal of the District Court of Dona Ana County, New
Mexico this <u>16th</u> day of <u>December</u>, 2016.



                                 Claude Bowman
                                 Clerk of the Court

                                 By: _M. Elena Hayes_
                                 Deputy

U.S. POSTAGE
PAID
MESILLA PARK, NM
88047
DEC 24, 16
AMOUNT
**$9.04**
R2304H108769-04

1000     60062



RECEIPT
REQUESTED

7015 3010 0000 8043 1878

FLR: M34   MSC: H2W
GAGLIARDI STANLEY

TO: GAGLIARDI STANLEY
PH: 8474027400
MSC: H2W
PCS: 1

FROM: USPS
ARR: 701530100000093129
RKE: 701530100000093129
RCVD: 01/03/2017   14:39

FE.J6109375292

Allstate Insurance Company
Attn: Any Officer of the
Residual Markets Unit
3075 Sanders Road, Suite # H2D,
Northbrook, IL 60062-3075

Mr. T's Service
PO Box 954
Mesilla Park, NM 88047